OPINION
PER CURIAM.
Petitioner Yi Guo Huang, a native and citizen of China, seeks review of a November 30, 2007 decision by the Board of Immigration Appeals, denying his motion to reopen removal proceedings. Huang arrived in the United States in January 1992, without inspection. On October 9, 1999, the former Immigration and Naturalization Service, now the Department of Homeland Security, served him with a Notice to Appear, charging that he was removable under Immigration & Nationality Act (“INA”) § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Although Huang failed to attend his hearing, and, as a result, was ordered removed in absentia, he successfully moved to reopen proceedings. Huang applied for asylum, withholding of removal, and for protection under the Convention Against Torture, claiming that he feared persecution if he returns to China because he was in violation of China’s birth control policies.[1]
The Immigration Judge, in a December 1, 2003 decision, considered Huang’s claim that he would be persecuted in China on account of the birth of his two children in China, in 1989 and 1991, but denied him relief, finding him not credible due to several material inconsistencies between his asylum applications, dated January 12, 1992 and March 26, 1994, and his hearing testimony. Huang appealed to the Board of Immigration Appeals, which, on May 26, 2005, affirmed the IJ’s order of removal and adverse credibility finding. Huang petitioned for review of the Board’s May 26, 2005 decision in this Court at C.A. No. 05-3186, but the petition was procedurally terminated by Order of the Clerk on August 14, 2006.
On May 10, 2007, Huang filed an untimely motion to reopen with the Board, based on alleged changed conditions in China with respect to enforcement of its birth control policies. In that motion, Huang indicated that he is from Fujian Province, and he claimed that his return to China would result in him being placed in “re-education” or “labor camps,” or forcibly sterilized due to having had two children in violation of China’s “one-child” policy. In support of his motion to reopen, Huang submitted three brief translated articles that were not dated. A.R. 19-26. The first article, from World Journal News, indicated that in Fujian Province local authorities have set up “population schools” to hold an offending woman’s family members in custody until she agrees to an abortion or sterilization. A.R. 20. As a result, women who are about to give birth to their second child plan to hide in relatives’ homes in Hong Kong and then re-ten to China after they give birth. A.R. 21. The second translated article indicates that these “population schools” provoke resentment among citizens because they violate China’s “central policy.” A.R. 24. The article also notes that the local government is discussing whether to allow people to give birth to a second child. Id. *813 The third translated article chronicles the heartbreak of a family who had one of its members detained at a “population school.” A.R.25.
Huang also asked the Board to reopen proceedings in light of the country condition documents discussed in Slum Yung Guo v. Gonzales, 463 F.3d 109 (2d Cir. 2006), and he contended that he meets the definition of a “particular social group” in that the Chinese government punishes repatriated Chinese citizens for disloyalty to the Communist Party.
On November 30, 2007, the Board denied Huang’s motion to reopen. The Board found that the motion was time- and number-barred under 8 U.S.C. § 1229a(e)(7)(A), (C)(i), and that the evidence Huang submitted was insufficient to support his claim of changed country conditions, so as to create an exception to the tune limit for filing a motion to reopen, see id. at 1229a(c)(7)(C)(ii). The Board noted that the submitted evidence consisted only of three poorly translated newspaper articles, which did not specifically reference Huang’s circumstances, and which failed to establish that China has a policy of forced sterilizations for returnees from the United States. For authority, the Board relied on Matter of S-Y-G-, 24 I. & N. Dec. 247 (BIA 2007), and Matter of J-W-S- 24 I. & N. Dec. 185 (BIA 2007), and supplied par-entheticals to explain the relevance of these cases.[2] In addition, the Board noted that Huang’s children were born in China on December 3, 1989 and December 16, 1991, and that his wife continues to reside there without being harmed. The Board concluded by denying Huang’s request for equitable tolling and declining to exercise its sua sponte authority to reopen proceedings, and the Board rejected Huang’s particular social group claim on the merits.[3] Huang has timely petitioned for review.
We will deny the petition for review. We have jurisdiction under INA § 242(a), 8 U.S.C. § 1252(a). The Board’s jurisdiction arose under 8 C.F.R. § 1003.2(c), which grants it authority to adjudicate motions regarding matters that it has previously considered. We review the Board’s denial of a motion to reopen for abuse of discretion. Immigration & Naturalization Serv. v. Abudu, 485 U.S. 94, 105, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). Under this deferential standard of review, we will not disturb the Board’s decision unless it is arbitrary, irrational, or contrary to the law. See Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir.2004).
The regulation governing motions to reopen provides that: “A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary *814 material.... A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.... ” 8 C.F.R. § 1003.2(c)(1). Although a motion to reopen “must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened,” 8 C.F.R. § 1003.2(c)(2), this time limitation does not apply if the alien seeks reopening “based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing.” 8 C.F.R. § 1003.2(c)(3)(h). See also 8 U.S.C. § 1229a(c)(7)(C)(ii).
Because Huang’s motion was untimely, being filed two years after the removal order became final, his motion had to be based on changed country conditions in China with respect to the government’s enforcement of its birth control policies. We conclude, however, that the Board did not abuse its discretion in denying his untimely motion to reopen because Huang did not make the required showing. Huang based his allegation of changed circumstances arising in China, and his assertion that his evidence was material to his claim of persecution, on three brief undated articles which indicated that, in Fujian Province, authorities have set up “population schools,” where a pregnant woman’s family members are held until the woman agrees to an abortion or sterilization. We are not persuaded that these articles, even assuming that they post-date Huang’s December 1, 2003 removal hearing, have any bearing on his present circumstances. Huang has two children who are now young adults, making the noted “population schools” seemingly inapplicable to him. The Board’s determination that the articles are not material to Huang’s claim that conditions have changed in China since his removal hearing, and that he will be forced into a labor camp or forcibly sterilized if he returns to China, was thus not arbitrary, irrational, or contrary to the law. See Guo, 386 F.3d at 562. We agree that Huang failed to make the showing necessary to excuse the untimeliness of his motion to reopen.
Huang also argues that the documents the Court of Appeals for the Second Circuit considered in Shou Yung Guo, 463 F.3d 109, be considered in support of his motion to reopen. These documents, he contends, that is, the 2003 Changle City Family Planning Administration decision and 2003 Fujian Province Decision, see Petitioner’s Brief, at vi, demonstrate a policy in China of forcibly sterilizing persons with two or more children. See Petitioner’s Brief, at 11.[4] In Shou Yung Guo, the Second Circuit explained that the 2003 Changle City Family Planning Administration decision held that, where either parent remains a Chinese national with no permanent residence overseas, any child of such a couple is deemed a Chinese national and shall be treated as such for domestic administrative purposes. 463 F.3d at 112-13. The decision states that Chinese nationals having children in violation of China’s family planning policies will be sanctioned according to family planning rules and regulations enforced at the local level. Id. The Fujian Province Department of Family Planning Administration affirmed the *815 Changle City opinion, and emphasized that no exceptions would be made for Chinese citizens whose reproductive behavior overseas violates local rules. Id.
Huang did not submit these documents with his motion to reopen, relying instead on the three undated translated newspaper articles, but he asserts that the Board abused its discretion when it failed to consider them anyway, because they were in the Board’s possession as a result of prior litigation by other parties in the Second Circuit. See Petitioner’s Brief, at 12. In a related argument, Huang contends that the Board’s reliance in his case on Matter of J-W-S- and Matter of S-Y-G- is in violation of Second Circuit law. See Petitioner’s Brief, at 15-16.[5]
Matter of S-Y-G- 24 I. & N. Dec. 247, is the decision issued by the Board following the Second Circuit’s remand in Shou Yung Guo, 463 F.3d 109, and, in it, the Board held that the applicant did not meet her burden to show that the proffered evidence reflected “changed circumstances” in China. The Board held that the documents submitted, which included the 2003 Changle City Administrative Opinion and the 2003 Fujian Province Administrative Decision, reflected general birth planning policies in the applicant’s home province that did not specifically show any likelihood that she or similarly situated Chinese nationals would be persecuted as a result of the birth of a second child in the United States. 241. & N. Dec. at 254-256. The Board noted that a 2007 Department of State letter established that children born outside of China, and who are not registered as permanent residents of China, are “not counted” against parents for purposes of family planning compliance. The State Department was not aware of either a national or provincial policy requiring that a parent be sterilized after the birth of two children. Id. at 255-56. With respect to one petitioner whose children were born many years apart, the Board cited the State Department’s 2005 Profile of Asylum Claims and Country Conditions for the proposition that provincial law indicates that married couples may apply to have a second child within certain time frames that are being increasingly relaxed. Id. at 256.
Similarly, in Matter of J-W-S-, the Board, on remand from the Second Circuit, addressed a petitioner’s claim that he had a well-founded fear of persecution on account of having two United States citizen children. 24 I. & N. Dec. at 186-88. The Board held that the alien failed to establish that he had a well-founded fear of forced sterilization in China. Id. at 190-192. Citing the State Department’s 2006 Country Report, the Board noted that Chinese citizens who violate family planning policies face only economic penalties, such as job loss and destruction of property. Id. at 190. The Board also noted that a 2007 State Department report stated that children born outside of China are not considered permanent residents of China and therefore are not counted against parents for purposes of family planning compliance. Id. at 190-91. Furthermore, according to government publications issued in 2005, 2006, and 2007, Fujian Province is lax and uneven in its family planning policy enforcement, that physical coercion is officially condemned, that there is no evidence of forced abortions, and any sanc *816 tions returning parents may face would be economic. Id. at 194.
Returning to Huang’s arguments, we find that the Board, in applying Matter of S-Y-G- to his case, necessarily considered the Shou Yung Guo documents. Cf Shao v. Mukasey, 546 F.3d 138, 151 (2d Cir. 2008) (“Although the documents prompting remand in Shou Yung Guo v. Gonzales, 463 F.3d at 113, see supra at [146-47], had not been part of the record at [one of the other petitioner’s] removal proceedings, the BIA nevertheless considered the possibility that this evidence might support an “enforcement” finding favorable to petitioner”). Furthermore, the Board addressed in its written decision the issues relevant to the Shou Yung Guo documents to the extent required, given that Huang did not comply with the regulation requiring him to submit the actual evidence with his motion to reopen. See 8 C.F.R. § 1003.2(c)(1) (“A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material....”).
It also was not wrong under Second Circuit law for the Board to apply Matter of S-Y-G-. Shao v. Mukasey, 546 F.3d at 169-172, is the reported decision wherein the Second Circuit denied the petition for review relating to Matter of S-Y-G-. See Shao, 546 F.3d at 165 (“[w]hile official documents from Fujian Province and Changle City indicate that Chinese nationals who violate birth limits while abroad will be subject to the same punishment as citizens whose violations occur in China, the BIA reasonably observed that these documents made no “reference] to sterilization, much less forced sterilization,” as a possible punishment”). The Second Circuit in Shao, 546 F.3d at 163-64 & n. 26, 172, also discussed with approval the Board’s decision in Matter ofJ-W-S- and, for that matter, it discussed with approval the Board’s decision in Matter of J-H-S-, 24 I. & N. Dec. 196, 203 (BIA 2007), wherein the Board addressed the sterilization issue with respect to children born in China. Matter of J-H-S- held that the evidence showed that physical coercion to achieve compliance with family planning goals is uncommon and unsanctioned by China’s national laws, and overall policy is more heavily reliant on incentives and economically-based penalties, see Shao, 546 F.3d at 158-161, 165.[6]
In sum, the record fully supports the Board’s conclusion that Huang did not demonstrate changed circumstances in China sufficient to excuse the untimeliness of his motion and justify reopening of his removal proceedings. We find that the Board’s decision was consistent with the standards we set forth in Zheng v. Att’y Gen. of U.S., 549 F.3d 260 (3d Cir.2008), in that the Board adequately considered the materials Huang submitted with his motion to reopen.
For the foregoing reasons, we will deny the petition for review.

. To qualify for asylum or withholding of removal, an applicant must establish that he has a well-founded fear that he will be persecuted if removed to his home country on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42), 1158(b), 1231(b)(3). "[A] person who has a well founded fear that he or she will be forced to [abort a pregnancy or undergo involuntary sterilization] or [is] subject to persecution for [failure, refusal, or resistance to undergo such a procedure] shall be deemed to have a well founded fear of persecution on account of political opinion.” 8 U.S.C. § 1101(a)(42)(B).

. The Matter of S-Y-G- parenthetical stated that, despite claims by the asylum respondents of an official policy of sterilization after the birth of two children, the State Department was not aware of such a policy at either the national or provincial level. The Matter of J-W-S- parenthetical stated that the evidence of record did not demonstrate that the Chinese government has a national policy of requiring forced sterilization of a parent who returns with a second child born outside of China, or that the respondent’s province of origin persecuted those with children born abroad. A.R. 2.

. With respect to equitable tolling, the Board properly noted that Huang did not allege deficient performance of counsel nor did he assert that he was unaware of the Board's prior decision. Huang has not pressed this argument in his brief on appeal, and thus we consider it waived. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir.1993). Huang also has not pressed his particular social group argument on appeal, and so it too is waived. Id. In addition, we are without jurisdiction to review the Board's decision declining to exercise its sua sponte authority to reopen removal proceedings. Calle-Vujiles v. Ashcroft, 320 F.3d 472, 475 (3d Cir.2003).

. The 1999 Changle City Family Planning Handbook, to the extent Huang has relied on it in his brief, see Petitioner’s Brief, at vi, plainly was available to him prior to his December 2003 removal hearing and thus cannot be relied upon to justify reopening under the "changed circumstances” exception. 8 C.F.R. § 1003.2(c)(1).

. We take this occasion to note that we find Huang’s reliance throughout his brief on Second Circuit law more than a little curious. Although we may find the reasoning of a sister court persuasive, see Reilly v. City of Atlantic City, 532 F.3d 216, 229 (3d Cir.2008), we are bound only by the law in this circuit, see Institutional Investors Group v. Avaya, 564 F.3d 242, 276 n. 50 (3d Cir.2009), and a litigant should acknowledge this prior to making an argument based on case law from another circuit.

. Because Shao v. Mukasey directly addresses Matter of S-Y-G-, we conclude that it is unnecessary for us to reach Huang’s arguments concerning Lin v. U.S. Dep't of Justice, 459 F.3d 255 (2d Cir.2006). See Petitioner’s Brief, at 15-16. For the same reason, we decline Huang's request for a remand to the Board in order for it to consider Gao v. Muka-sey, 508 F.3d 86 (2d Cir.2007), see Petitioner’s Brief, at 19-20, and his request that we retain jurisdiction.